# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JACK AARON LOGSDON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. CIV-11-1471-F |
| ) | |
| KAMERON HARVANKEK, Warden ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this action seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Petition) [Doc. 1]. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B) and (C). Respondent filed a Response (Response) [Doc. 12] and the relevant state court Trial Transcript (T. Tr.) and the Original Record (O.R.). Petitioner relied (Reply) [Doc. 15] and the matter is now at issue. For the following reasons, it is recommended that the Petition be denied.

## Procedural History

Petitioner was convicted in the District Court of Logan County, Case No. CF-2005-189, on eleven counts of fraudulent sale of a security (Counts 1, 3, 4-8, 10, 12, 14, 16), two counts of forgery in the second degree (Counts 9, 11), two counts of obtaining money by false pretenses (Counts 13, 15), and one count of racketeering (Count 17). *See* O.R., p. 700. Petitioner filed a direct appeal and the Oklahoma Court of Criminal Appeals (OCCA)

affirmed in relevant part.[1]  *See* Response, Ex. 5.  Thereafter, the state court denied Petitioner's application for post-conviction relief, and the OCCA again affirmed.  *Id.,* Exs. 8, 9.

## Petitioner's Claims

Petitioner raises four claims for relief:  insufficiency of evidence for the racketeering conviction (Ground One), ineffective assistance of trial counsel based on a refusal to allow Petitioner to testify (Ground Two) and failure to investigate and call proper witnesses (Ground Three), and ineffective assistance of appellate counsel based on a failure to challenge trial counsel's ineffectiveness on direct appeal (Ground Four).  *See* Petition, pp. 12-29.

## Standard Governing Habeas Review

When the OCCA denies a habeas claim on the merits, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides the standard for this court's review.  "[The AEDPA] reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 786 (2011) (citation omitted).  Thus, habeas relief may be granted only if the OCCA's adjudication of the merits of a federal claim has resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States .

---

[1] On issues unrelated to these proceedings, the OCCA modified Petitioner's racketeering sentence and vacated the restitution order.  *See* Response, Ex. 5, p. 26.

. . ." 28 U.S.C. § 2254(d)(1).  Further, judicial review is directed to the result of the OCCA's decision, not its reasoning.  *See Harrington v. Richter*, 131 S. Ct. at 784 ("[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning.").  Thus, even "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  *Id.*

A decision is "contrary to" clearly established federal law for purposes of § 2254 if "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the result reached by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).  A decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "AEDPA's conception of objective unreasonableness lies 'somewhere between clearly erroneous and unreasonable to all reasonable jurists.'"  *House v. Hatch*, 527 F.3d 1010, 1019 (10th Cir. 2008) (quoting *Maynard v. Boone*, 468 F.3d 665, 670 (10th Cir. 2006)).  Thus, the AEDPA imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, __U.S.__, 131 S.Ct. 1388, 1398 (2011) (citations and internal quotation marks omitted).  The

AEDPA further mandates that factual findings made by a state trial or appellate court are presumed correct and may be rebutted only by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

When the OCCA has not addressed a claim on the merits, this Court may decide the claim by exercising its independent judgment. *See, e.g., Hain v. Gibson*, 287 F.3d 1224, 1229 (10th Cir. 2002).

## Analysis of Claims

### I. Ground One - Insufficiency of the Evidence

Petitioner alleges in Ground One that there was insufficient evidence to convict him of racketeering (Count 17). Petition, pp. 12-18. Specifically, Petitioner argues the lack of an "organized-crime endeavor" and "failure to prove significant corporate involvement or corporate benefit." *Id.*, p. 13. The undersigned concludes that habeas relief is not warranted on Ground One.

In reviewing a habeas challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* In applying this standard, the Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long

as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (citation omitted)). Both direct and circumstantial evidence is considered in determining whether evidence is sufficient to support a conviction. *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998).

On direct appeal, the OCCA rejected Petitioner's claim of insufficient evidence on the racketeering conviction, finding:

> The evidence was sufficient to support a conviction for racketeering in Count 17 because when the evidence is viewed in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt. . . . Specifically, the evidence was sufficient to prove both the existence of an enterprise and Logdson's participation in its affairs through a connected pattern of racketeering activity. *Miskovsky v. State*, 2001 OK CR 26, ¶ 5, 31 P.3d 1054, 1059.

Response, Ex. 5, p. 4.

Because the OCCA applied the *Jackson* standard,[2] this Court's task is limited to inquiring whether the OCCA's decision applying that standard was reasonable. *See Brown v. Sirmons*, 515 F.3d 1072, 1089 (10th Cir. 2008).

The racketeering statute provides that "no person employed by or associated with any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise

---

[2]Rather than directly citing *Jackson*, the OCCA relied on *Spuehler v. State*, 709 P.2d 202 (Okla. Crim. App. 1985), and noted that *Spuelher* was quoting *Jackson*. *See* Response, Ex. 5, p. 5. As the OCCA indicated, *Spuehler* applied *Jackson* to a claim of insufficient evidence. *See Spuehler v. State*, 709 P.2d at 203-204. As the appellate court applied the correct analogous standard, its decision requires deference. *See Turrentine v. Mullin*, 390 F.3d 1181, 1203 (10th Cir. 2004) ("Although the OCCA did not directly cite *Jackson*, it applied an analogous state standard . . . ; [w]e therefore ask whether the OCCA's decision was contrary to or involved an unreasonable application of *Jackson*, or whether it was based on an unreasonable determination of the facts in light of the evidence presented.").

through a pattern of racketeering activity or the collection of an unlawful debt." Okla. Stat. tit. 22, § 1403(A). Oklahoma law provides that the term "enterprise" includes any individual or group of persons. *See* Okla. Stat. tit. 22, § 1402(2).

In addition, "racketeering activity" means:

> [E]ngaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any conduct which is chargeable or indictable as constituting a felony violation one or more of the Oklahoma Statutes, regardless of whether such act is in fact charged or indicted:
>
> > relating to fraud [of fraudulent sale of a security, forgery in the second degree or obtaining money by false pretenses] . . . .

Okla. Stat. tit. 22 § 1402(10)(t); O.R., p. 654.

Petitioner does not dispute the evidence that he was guilty of the underlying felonies. Instead, Petitioner claims that his crimes were not of the sort intended to be punished through the racketeering statute and that the State otherwise lacked sufficient evidence of "corporate involvement." Petition, p. 13.

### A.     The Alleged Lack of an Organized-Crime Endeavor

In part, Petitioner alleges that his crimes were simply acts of fraud and did not fall within the types of crimes intended to be prosecuted as racketeering. In support, Petitioner relies on *Glenn v. State*, 26 P.3d 768 (Okla. Crim. App. 2001), wherein the OCCA held that the defendant had been improperly charged under the racketeering statutes. Specifically, the OCCA held that "Oklahoma's criminal RICO statute prohibits one from profiting through racketeering activities through the affairs of an enterprise," and that the statute was not

6

intended to simply be "another enhancement for garden-variety crimes." *Glenn*, 26 P.3d at 769, 772. Because the evidence in *Glenn* established only that two neighbors had conspired to steal another neighbor's cattle, and no legitimate business or other enterprise had been involved, the OCCA found the racketeering charge to have been unwarranted. *See id.* at 769-72.

A few months after deciding *Glenn*, the OCCA held in *Miskovsky v. State*, 31 P.3d 1054 (Okla. Crim. App. 2001), that racketeering charges had been appropriately leveled against an attorney who had used his legitimate law practice in part to further his criminal goals. *See Miskovsky*, 31 P.3d at 1059. The OCCA distinguished *Glenn*, holding that the attorney's longstanding use of his legitimate business for criminal purposes had "an effect on society greater than the effect of his individual crimes;" in contrast, the defendant in *Glenn* had engaged in only a short-term series of cattle thefts. *Id.*

Petitioner's trial court overruled Petitioner's motion for a directed verdict of acquittal on the racketeering charge, finding that the holding in *Miskovsky* was controlling in Petitioner's case. *See* T. Tr. Vol. VII, p. 60. On direct appeal, the OCCA likewise relied on the decision in *Miskovsky* as support for the court's finding that the evidence was sufficient to support Petitioner's conviction on the racketeering charge. *See* Response, Ex. 5, p. 4. This determination of applicable state law is binding on habeas review. *See Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002) (stating that in habeas review, the state courts' interpretation of a state statute is binding). Moreover, the OCCA's application of *Miskovsky* would appear reasonable even without this presumption of correctness, as

Petitioner was charged with using several legitimate businesses, over the course of several years, to engage in fraudulent practices affecting many people. *See* O.R., pp. 119-26. This places Petitioner's circumstances squarely within the confines of *Miskovsky*. *See Miskovsky v. State*, 31 P.2d at 1059 (noting the evidence of defendant's operation of a legitimate business - his law practice - over a substantial period of time, at least in part to further his criminal goals).

      B.      The Evidence of "Corporate Involvement"

Petitioner also alleges that the State lacked sufficient evidence of "corporate involvement" or "corporate benefit."[3] Petition, pp. 13, 16. On this issue, the undersigned finds that the OCCA reasonably concluded that Petitioner used his legitimate businesses to engage in the underlying felonies.

The evidence at trial demonstrated that Petitioner operated a cattle company, several travel agencies, and an investment company. *See* T. Tr. Vol. III, pp. 244-45; Vol. IV, pp. 101-104, 108-109; *see also* State's Exs. 2a, 2b, 6a, 6b, 7b, 8b, 10, 10a, 10b; Defendant's Exs. 119-29, 142-48, 150-51, 153, 158-61. To sufficiently establish a nexus between Petitioner's criminal acts and his legitimate businesses, the State did not have to prove that these businesses benefitted from the criminal activity. *See United States v. Killip*, 819 F.2d 1542,

---

[3]As noted above, Oklahoma law requires the participation of an "enterprise;" however, that entity does not have to have a "corporate" identity. *See supra* p. 6. Here, the State did in fact rely on the involvement of Petitioner's legitimate corporate businesses. *See* O.R., p. 119.

1549 (10th Cir. 1987).[4]  Instead, the State only had to show that the businesses "facilitated the illegal activities." *Id.*

The evidence presented at trial established that Petitioner used his businesses to: (1) fraudulently sell security interests in real estate without disclosure of mortgages and other investors, *see* T. Tr. Vol. II, pp. 44-48, 96-97; Vol. III, pp. 50-69; Vol. IV, pp. 191-95; Vol. V, pp. 52-76, 201-208;[5] (2) fraudulently sell security interests in the travel agencies without disclosure of mortgages and other investors, *see id.* Vol. II, pp. 48-67; Vol. III, pp. 97-109, 224-37; Vol. IV, pp. 26-38, 50-64, 184-191;[6] and, (3) fraudulently purport to buy and sell cattle on behalf of investors, *see id.* Vol II, pp. 68-81; Vol. IV, pp. 155-83; Vol. V, pp. 77-110, 163-68, 186-201; Vol. VI, pp. 46-79.[7]

Based on this evidence, any rational trier of fact could have found beyond a reasonable doubt that Petitioner used his legitimate businesses to facilitate his criminal activities.  As such, the OCCA reasonably concluded that there was sufficient evidence to prove "both the existence of an enterprise and [Petitioner's] participation in its affairs through a connected pattern of racketeering activity." Response, Ex. 5, p. 4.

---

[4]The OCCA has interpreted Oklahoma law to instruct that "federal law may guide [the court] in interpreting the [racketeering] statute." *Glenn*, 26 P.2d at n.3 (citing 22 O.S. § 1419).

[5]*See also* State's Exs. 8a, 8b.

[6]*See also* State's Exs. 6, 6a, 6b, 7b, 8b, 14, 14a, 14b, 16, 17h, 18, 22, 23.

[7]*See also* State's Exs. 10, 10a, 10b, 12, 17c.2, 17c.3, 17e.1, 17e.2.

C. Summary

Applying its own state law and the *Jackson* standard, the OCCA held that there was sufficient evidence to charge and convict Petitioner of racketeering. That decision was reasonable, and the undersigned therefore recommends denial of relief on Ground One.

## II. Grounds Two and Three - Ineffective Assistance of Trial Counsel

In Grounds Two and Three, Petitioner claims ineffective assistance of trial counsel based on the attorney's alleged refusal to allow Petitioner to testify (Ground Two) and failure to investigate and call proper witnesses (Ground Three). Petition, pp. 18-22. On independent review,[8] the undersigned finds that habeas relief is not warranted on these claims.

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a counsel's performance is not constitutionally ineffective unless it was both deficient and prejudicial. *See id.* at 688, 692. On the question of deficient performance, the Court "must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance; that is, [Petitioner] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (citation omitted). Prejudice is shown if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

---

[8]The OCCA did not reach the merits of these arguments as Petitioner failed to raise the claims on direct appeal. For this reason, Respondent urges procedural bar, *see* Response, pp. 30-41; however, the claims are more easily disposed of on the merits and the court may therefore address the claims on that ground. *See Miller v. Mullin*, 354 F.3d 1288, 1297 (10th Cir. 2004).

A.  Ground Two:  The Alleged Refusal to Allow Petitioner to Testify

Petitioner avers that he informed trial counsel of his desire to testify, but the attorney refused based on a potential scheduling conflict.  Petition, pp. 18-19 & Ex. A.  The undersigned finds that Petitioner's self-serving affidavit fails to establish either deficient performance or prejudice under *Strickland*.

Alleged Deficient Performance

Petitioner alleges that his trial attorney did not allow him to testify at trial; however, his evidence fails to support his claim.  Petitioner admits in an affidavit that he "stopped telling [the attorney] that [he] insisted on testifying" after his attorney discouraged it.  Petition, Ex. A, p. 1.  In light of the strong presumption of reasonable performance, Petitioner's statement, at best, demonstrates a disagreement between Petitioner and his attorney, with Petitioner ultimately declining to exercise his right to testify.  As it is the Petitioner's burden to establish entitlement to habeas relief, the undersigned finds Petitioner's argument and evidence insufficient to show a constitutionally deficient attorney performance.

Alleged Prejudice

Even assuming counsel's performance was deficient, the undersigned finds that Petitioner has not demonstrated any prejudice.

Petitioner states that his testimony would have proven:  (1) the existence of a legitimate cattle operation; (2) the lack of "alter ego" identities for the travel businesses; and, (3) a legitimate attempt to market the relevant real estate.  *Id.*, p. 19 & Ex. A, pp. 1-2. However, review of the evidence presented at trial shows that such testimony would have

11

been cumulative and/or unpersuasive; consequently, Petitioner fails to show that the result of the trial would have been different had he testified. *See Morris v. Secretary, Dept. of Corrections*, __ F.3d __, 2012 WL 1370848, at *11-12 (11th Cir. 2012) (holding that petitioner failed to show any prejudicial effect from attorney's alleged failure to allow petitioner to testify, in light of the cumulative nature of petitioner's proposed testimony).

For example, both Petitioner and the State offered evidence of legitimate cattle operations. Petitioner was trying to establish a lack of fraud, and the State was trying to prove that Petitioner lured his investors in with legitimate cattle deals and then ultimately induced them into fraudulent investments where cattle was not actually being purchased or sold. *See* T. Tr. Vol. VIII, pp. 15-17. Thus, both sides offered evidence that Petitioner: (1) engaged in the profitable buying and selling of cattle with various investors, *see id.* Vol. II, pp. 67-70; Vol. IV, pp. 148-54; Vol. V, pp. 24-25; (2) legitimately purchased cattle from the Devereaux family and other sources, *see id.* Vol. III, pp. 164-65, 168-78, 181-82, 186-97, 201, 209-12, 217-21; Vol. VII, pp. 12-14; (3) grazed cattle on local farmers' property, *see id.*, Vol. V, pp. 146, 149, 153, 159; and, (4) fed cattle in view of one investor, *see id.*, Vol. VI, pp. 7-9. Through cross-examination, Petitioner's attorney also challenged the State's reliance on Petitioner's lack of documentation for feed and veterinarian bills. *See id.*, Vol. III, pp. 16-20; Vol. IV, pp. 132-33; Vol. VII, pp. 8-12. Thus, the undersigned finds that Petitioner's purported testimony regarding the legitimacy of his cattle operation would have been cumulative to this evidence.

More importantly, the State presented evidence that for numerous cattle deals: (1) the

investors were never able to locate the cattle, *see id.* Vol. II, p. 81; Vol. III, pp. 246-48; Vol. IV, pp. 171-72, 183; Vol. V, pp. 104-107, 200-201; (2) the cattle Petitioner informed the investors that they owned were actually owned by other individuals, *see id.* Vol. II, pp. 78-80, 143-45, 153-64, 167-69; Vol. V, pp. 163-68; and, (3) Petitioner's bank statements did not reflect purchases of cattle in correspondence with the victims' investments, *see id.* Vol. VI, pp. 50-51, 56-72.  Petitioner has not proposed any testimony that reflects a defense to this evidence.

Petitioner also proposes testimony that his travel agencies were "not alter egos for each other." Petition, Ex. A, p. 2.  This testimony would have been irrelevant, as no part of the State's theory relied on an "alter ego" argument.  That is, the theory of corporate "alter-ego" involves a question of corporate liability.  In Oklahoma, for example, "[o]ne corporation may be held liable for the acts of another under theory of alter-ego liability" if certain requirements are met. *Gilbert v. Security Finance Corp. of Oklahoma, Inc.*, 152 P.3d 165, 175 (Okla. 2006).  Here, the State was not attempting to prove that one of Petitioner's travel agencies was liable for the corporate misconduct of another.  Rather, the State was attempting to establish that while some of the travel companies were separate active agencies, they were all operated under the same umbrella.  To that end, several witnesses testified as to the existence of separate and active travel agencies. *See* T. Tr. Vol. II, pp. 49, 60-61; Vol. III, pp. 104-106; Vol. IV, pp. 29-30, 36, 39-40, 54, 101, 103-104, 135, 184-85, 187; Vol. V, pp. 26-29, 40-41.  Consequently, Petitioner's proposed testimony regarding the lack of "alter-ego" status of the travel agencies would have been irrelevant and any testimony

regarding the separate activities of the agencies would have been cumulative.

Finally, Petitioner states that he would have testified regarding the value of his real estate property and his efforts to actively market the properties. Petition, Ex. A, pp. 2-3. However, three different witnesses testified to these facts emphasizing both the marketing and value of each property. *See* T. Tr. Vol. III, pp. 59, 112-13; Vol. V, pp. 18-19, 21-22; Vol. VII, pp. 31-40; *see also* Def. Exs. 201-203. Petitioner's testimony would have been cumulative.

Because Petitioner's proposed testimony was for the most part cumulative, unpersuasive in light of the State's evidence, and likely to have strengthened the State's theory that Petitioner intentionally used legitimate investments to defraud others, the undersigned finds that Petitioner has not shown a reasonable probability that the outcome of his trial would have been different had he testified. As a result, habeas relief is not warranted on this claim.

### B. Ground Three: The Alleged Failure to Investigate or Call Relevant Witnesses

Petitioner also blames his attorney for failing to investigate the extent of Petitioner's cattle businesses, "the separateness of the travel agencies," or Petitioner's diligence in marketing the real estate and failing to call relevant witnesses to testify on such matters. Petition, Ex. A, p. 3. As with above, Petitioner has failed to show either deficient representation or prejudice on these issues.

#### Alleged Deficient Representation

Petitioner states that "as far as [he] knew" trial counsel failed to investigate. *Id.* But

by his own admission, Petitioner is only guessing that his attorney's investigation was deficient. Such speculation is insufficient to overcome the strong presumption that his attorney's representation was reasonable. *See Carter v. Johnson*, 131 F.3d 452, 464 (5th Cir. 1997) ("Carter's argument . . . is pure speculation, insufficient to overcome the strong presumption of [attorney] competency . . . .").

Moreover, the record shows that Petitioner's attorney addressed the legitimate cattle business, the separateness of the travel agencies, and the real estate marketing through cross-examination and jury arguments. *See* T. Tr. Vol. II, pp. 82-83; Vol. III, pp. 111-13, 120-21, 131, 168-78, 187-97, 204-12; Vol. IV, pp. 39-40, 133-35; Vol. V, pp. 5-7, 18-19, 113-14, 149, 158-89; Vol. VII, pp. 12-16, 31-40; Vol. VIII, pp. 52-67. Petitioner fails to show that counsel's efforts in this regard were deficient. *See Moore v. Gibson*, 195 F.3d 1152, 1179 (10th Cir. 1999) (finding that counsel's "performance was not deficient" and rejecting claim that attorney failed to conduct a sufficient investigation where counsel established relevant facts through cross-examination and jury arguments).

### Alleged Prejudice

The undersigned also finds that Petitioner has not demonstrated that any prejudice resulted from the alleged failure to investigate and call witnesses. Petitioner offers only his belief that testimony from other witnesses would have shown that he had a legitimate cattle business, operated separate travel agencies, and actively marketed the real estate. Petition, Att. 1. As discussed above, extensive evidence was introduced by both sides regarding all three subjects. The undersigned finds no reasonable probability that this unspecified

testimony from other witnesses would have resulted in a different outcome at trial. *See Medina v. Barnes*, 71 F.3d 363, 367 (10th Cir. 1995) (holding cumulative evidence was "of limited probative value" and "cannot provide the basis for habeas relief [on an ineffective assistance of counsel claim]").

    C.    <u>Summary</u>

The burden of establishing ineffective assistance of trial counsel lies with Petitioner, and the undersigned finds that he has failed to demonstrate entitlement to habeas relief. Accordingly, the undersigned recommends that the Court deny relief on Grounds Two and Three.

## II. **Ground Four - Ineffective Assistance of Appellate Counsel**

In his final ground for relief, Petitioner alleges that his appellate counsel was ineffective for failing to challenge trial counsel's alleged ineffectiveness on direct appeal. Petition, pp. 26-28. The state court disagreed and the OCCA affirmed. *See* Response, Exs. 8 & 9. The undersigned also recommends rejection of this claim.

Recently, the Supreme Court has reiterated that on federal habeas review, the question is *not* whether counsel's performance fell below the *Strickland* standard, but whether the OCCA's adjudication of a *Strickland* claim was unreasonable. *See Harrington v. Richter*, 131 S. Ct. at 785. In other words, it is not even enough that the federal court finds a violation of *Strickland*. If that occurs, the court must then also determine "what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with [*Strickland*]."

*Id.* at 786.

Here, because the OCCA rejected Petitioner's appellate counsel claim on the merits, he carries the burden of "showing there was no reasonable basis for the state court to deny relief." *Id.* at 784. The undersigned concludes that Petitioner has not met this burden. As found above, trial counsel's alleged failure to allow Petitioner to testify, to conduct an adequate investigation and to call other witnesses did not result in a constitutional violation under *Strickland*. Therefore, as the OCCA held, the allegations would not have entitled Petitioner to relief on direct appeal. Consequently, appellate counsel's failure to raise the claims on direct appeal could not have prejudiced Petitioner and the rejection of this claim in state court was reasonable.

## **RECOMMENDATION**

Based upon the foregoing analysis, it is recommended that the Petition for a Writ of Habeas Corpus be denied.

Petitioner is advised of his right to file an objection to this Report and Recommendation in accordance with Fed. R. Civ. P. 72(b)(2). Any such objection must be filed with the Clerk of this Court by the 19th day of July, 2012. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives his right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 29th day of June, 2012.

_____
BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE